**ORIGINAL**

1  Iman Lordgooei (State Bar No. 251320)
   JONES DAY
2  1755 Embarcadero Road
   Palo Alto, CA 94303
3  Telephone:    (650) 739-3939
   Facsimile:    (650) 739-3900
4  Email: ilordgooei@jonesday.com

5  Calvin P. Griffith (to be admitted *pro hac vice*)
   cpgriffith@jonesday.com
6  David M. Maiorana (to be admitted *pro hac vice*)
   dmaiorana@jonesday.com
7  Sheryl H. Love (to be admitted *pro hac vice*)
   shlove@jonesday.com
8  JONES DAY
   North Point
9  901 Lakeside Avenue
   Cleveland, Ohio 44114
10 Telephone:  (216) 586-3939
   Facsimile:  (216) 579-0212

11
   *Attorneys for Plaintiff*
12

FILED

MAY 11 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

13              UNITED STATES DISTRICT COURT          **EDL**

14              NORTHERN DISTRICT OF CALIFORNIA

15

16

17  VASONOVA, INC.,                     **CV 12 2422**

18          Plaintiff,

19      v.                              Case No. _____

20  SORIN GRUNWALD, ROMEDEX            **COMPLAINT AND**
    INTERNATIONAL SRL, and BARD        **DEMAND FOR JURY TRIAL**
21  ACCESS SYSTEMS, INC.,

22          Defendants.

23

24      Plaintiff, VasoNova, Inc. ("VasoNova"), for its claims against Defendants Sorin

25  Grunwald ("Grunwald"), Romedex International SRL ("Romedex"), and Bard Access Systems,

26  Inc. ("Bard") (collectively, "Defendants"), hereby states and alleges the following:

27

28
                                                       COMPLAINT AND
                                                       DEMAND FOR JURY TRIAL

**NATURE OF THE ACTION**

1.     This is a diversity action in which VasoNova, a developer and manufacturer of medical devices, seeks resolution of its disputes with: (1) Grunwald, its former Chief Technology Officer who has taken VasoNova's confidential and proprietary information, breached his contractual and fiduciary duties to VasoNova, engaged in unfair competition, and committed fraud; (2) Romedex, a corporation formed and run by Grunwald, which Grunwald used to take VasoNova's confidential and proprietary information; and (3) Bard, the company to which Grunwald and Romedex purported to sell VasoNova's confidential and proprietary information, including numerous patent applications.

2.     In the months leading up to his departure from VasoNova in February 2009, Grunwald was secretly competing with VasoNova, deceiving VasoNova about his activities, and attempting to take VasoNova's intellectual property for his own.  After leaving VasoNova, Grunwald continued with his deceit, building a business on work and property actually owned by VasoNova.  Grunwald's deceit came to light in a court action in the Fall of 2010, after which he purported to sell VasoNova's assets to Bard.  This action is brought to recover damages for Grunwald's wrongdoing, to quiet title in the patent applications and other intellectual property at issue, and for a declaration that VasoNova is the true owner of the intellectual property.

**THE PARTIES**

3.     VasoNova is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business in San Mateo County at 155 Jefferson Drive, Suite 100, Menlo Park, California 94025.

4.     On information and belief, Bard is a corporation organized and existing under the laws of the State of Utah that maintains its principal place of business at 605 North 5600 W., Salt Lake City, UT 84116.

5.     On information and belief, Romedex is a corporation organized and existing under the laws of the country of Romania that maintains places of business at 58 Aleea Arubium, Bucharest, Romania, and at 74 Soseaua Fundeni, Bucharest, Romania.

6.     On information and belief, Mr. Grunwald is a citizen of Romania, residing at 74

COMPLAINT AND
DEMAND FOR JURY TRIAL

- 2 -

1     Aleea Vatra, Bucharest, Romania.

2                              **JURISDICTION AND VENUE**

3          7.      This Court has personal jurisdiction over Grunwald because of his substantial

4 contacts with this District. Much of Grunwald's conduct that forms the basis for this action

5 occurred in this District. Grunwald resided and was employed in this District during a substantial

6 portion of the period in which he committed the acts complained of herein.

7          8.      This Court has personal jurisdiction over Romedex by virtue of its founder

8 Grunwald's substantial contacts within this District. Prior to founding Romedex, Grunwald

9 committed the acts complained of herein in this District, then incorporated Romedex to continue

10 and facilitate his wrongful conduct. Romedex wrongfully acquired and used intellectual property

11 created in this District and subject to a contract between VasoNova and Grunwald governed by

12 California law.

13          9.      This Court has personal jurisdiction over Bard by virtue of its substantial contacts

14 with this District. On information and belief, Bard has transacted business in this District

15 sufficient for this Court to have general jurisdiction over Bard.

16          10.     The Court has subject matter jurisdiction over the claims asserted in this

17 Complaint pursuant to 28 U.S.C. §§ 1332(1), (2) and/or (3) because VasoNova is not a citizen of

18 the same state as Bard, VasoNova is not a citizen of the same country as Romedex and Grunwald,

19 and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20          11.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2).

21                            **INTRADISTRICT ASSIGNMENT**

22          12.     This action arises in San Mateo County, California. Pursuant to Civil L.R. 3-2(e)

23 and General Order No. 44, this action is to be assigned to the San Francisco Division or the

24 Oakland Division.

25                              **FACTUAL BACKGROUND**

26          13.     VasoNova began as a small start-up company working hard to develop and

27 commercialize a system for guiding the placement of catheters, including peripherally inserted

28 coronary catheters or PICCs. A PICC is a catheter inserted in, for example, a vein in the arm and

COMPLAINT AND
DEMAND FOR JURY TRIAL

1   moved through the circulatory system to the heart, for example, to the caval-atrial junction just

2   outside the right atrium of the heart, in order to administer medication. Typically, such a catheter

3   is inserted blindly, by a clinician or specially trained nurse, and then the position of the tip of the

4   catheter is verified by X-ray. If the tip of the catheter is out of position, the clinician or nurse

5   adjusts it and a second X-ray is taken. This process is cumbersome, time-consuming and costly,

6   particularly when multiple X-rays are needed.

7       14.    VasoNova saw an opportunity to streamline this process and improve patient care

8   by developing a system to locate the tip of the catheter. VasoNova's goal was to introduce a

9   product that would make X-ray verification unnecessary.

10      15.    As the fledgling VasoNova attracted outside investment and formalized its internal

11  operations, it entered into confidentiality agreements with its employees. As VasoNova's Chief

12  Technology Officer, Grunwald signed a Confidential Information, Invention Assignment, and

13  Arbitration Agreement (the "Confidentiality Agreement") on March 20, 2007.

14      16.    The Confidentiality Agreement required Grunwald to maintain "Company

15  Confidential Information" in confidence during the term of his employment and thereafter.

16  "Company Confidential Information" is defined as:

> "Company Confidential Information" means any nonpublic
> information that relates to the actual or anticipated business,
> research or development of the Company, or to the Company's
> technical data, trade secrets or know-how, including, but not limited
> to, research, product plans or other information regarding the
> Company's products or services and markets therefor, customer
> lists and customers (including, but not limited to, customers of the
> Company on which I called or with which I may become
> acquainted during the term of my employment), software,
> developments, inventions, processes, formulas, technology, designs,
> drawings, engineering, hardware configuration information,
> marketing, finances and other business information; provided,
> however Company Confidential Information does not include any
> of the foregoing items to the extent the same have become publicly
> known and made generally available through no wrongful act of
> mine or of others.

    17.    The Confidentiality Agreement also addressed intellectual property created by

Grunwald during his employment. Specifically, it provides:

> I agree that I will promptly make full written disclosure to the
> Company, will hold in trust for the sole right and benefit of the

Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (including during my off-duty hours), or with the use of Company's equipment, supplies, facilities, or Company Confidential Information, except as provided in Section 2.E below (collectively referred to as "Inventions").

18. Thus, the Confidentiality Agreement effected an assignment to VasoNova of all inventions made, developed, conceived or reduced to practice during Grunwald's employment.

19. The Confidentiality Agreement also prohibited Grunwald from engaging in business in competition with VasoNova while employed at VasoNova.

20. VasoNova's VPS (Vascular Positioning System) product uses both internal ECG and Doppler sonogram signals to locate the tip of a venous catheter as it is inserted, *e.g.*, in the arm, and moved through the circulatory system to the optimal location for administration of medication, *e.g.*, the caval-atrial junction just outside the right atrium of the heart. As VasoNova's Chief Technology Officer, Grunwald was intimately involved in every aspect of the development of VasoNova's VPS (Vascular Positioning System) product, including the invention of patentable technologies, hardware design, software design and algorithms, clinical testing, market research, and FDA clearance.

21. After VasoNova completed its second round of financing, Grunwald unexpectedly announced his resignation. On January 15, 2009, Grunwald signed a Separation Agreement and Release with VasoNova in which he "reaffirms and agrees to abide by the terms of the Confidentiality Agreement."

22. Both the Confidentiality Agreement and the Separation Agreement are governed by California law. Both also contain arbitration clauses.

23. Grunwald's last day of employment with VasoNova was February 3, 2009.

## GRUNWALD'S MISCONDUCT

24. While at VasoNova, Grunwald worked on developing both the hardware and

COMPLAINT AND
DEMAND FOR JURY TRIAL

1    software aspects of VasoNova's VPS product; participated in clinical studies; worked with

2    confidential market research sponsored and paid for by VasoNova; assisted in formulating and

3    executing VasoNova's strategy regarding developing, patenting and commercializing technology

4    relating to VPS; and worked on obtaining 510(k) market clearance from the Food and Drug

5    Administration for VPS. He had access to, and in some cases generated, VasoNova's most

6    confidential and valuable Company Confidential Information and intellectual property.

7         25.    Upon information and belief, during his employment with VasoNova, at least as

8    early as September 2008, Grunwald conceived of an alternative method of locating the position of

9    the tip of a venous catheter using only ECG signals. Grunwald ultimately called his product

10   Sapiens TLS. As used herein, "Sapiens TLS" refers to all research, development, inventions,

11   ideas and other information relating to and leading to the product ultimately known as Sapiens

12   TLS.

13        26.    In breach of his Confidentiality Agreement with VasoNova, Grunwald did not

14   disclose Sapiens TLS to VasoNova. Instead, Grunwald decided to take this technology and

15   develop it for his own benefit. Because Sapiens TLS is in direct competition with VasoNova's

16   VPS product, Grunwald knew that he could take advantage of VasoNova's Company

17   Confidential Information to shorten the time to develop and commercialize Sapiens TLS.

18        27.    Beginning at least as early as September 2008, Grunwald used VasoNova's

19   Company Confidential Information in developing and commercializing Sapiens TLS. In order to

20   hide his activities from VasoNova, Grunwald used a company he had previously formed called

21   Dykonex Europe or Dykonex Sarl.

22        28.    VasoNova was aware of the existence of Dykonex, but Grunwald had represented

23   to VasoNova that Dykonex was merely a distributor of non-competitive products in which

24   Grunwald had no day-to-day involvement.    To obscure his activities, Grunwald deceived

25   VasoNova about his activities with Dykonex.

26        29.    Upon information and belief, in November 2008, Grunwald conducted

27   electromagnetic compatibility tests on a prototype of Sapiens TLS at the Bay Area Compliance

28   Laboratories Corp. Grunwald did not tell VasoNova about the existence of the Sapiens prototype

- 6 -

COMPLAINT AND
DEMAND FOR JURY TRIAL

or the testing.  Also upon information and belief, in November 2008, Grunwald demonstrated Sapiens TLS to Dr. Philippe Montravers and his team at Bichat Hospital in Paris, France. Grunwald still did not disclose the product or his activities to VasoNova.

30.    The Gavecelt Congress, a vascular medicine conference, was held in Rome, Italy on December 3-5, 2008.  Grunwald attended as VasoNova's CTO and at VasoNova's expense, in order to further VasoNova's business.  Instead, Grunwald pursued his own agenda to VasoNova's detriment.

31.    Unknown to VasoNova, instead of demonstrating and generating interest in VasoNova's product, Grunwald demonstrated Sapiens TLS to various physicians at the Gavacelt conference.   In addition, Grunwald demonstrated Sapiens TLS to VasoNova's competition. Among the competitors whom Grunwald sought to interest in Sapiens was Medical Components, Inc. ("MedComp").

32.    On December 6, 2008, while still in Italy purportedly on VasoNova's behalf, Grunwald conducted a clinical study of Sapiens TLS at Catholic University Hospital in Rome instead of devoting his time to VasoNova's business.

33.    Dr. Mauro Pittiruti, whom VasoNova had previously identified as a potential collaborator, was Grunwald's principal investigator in the study of Sapiens and assisted Grunwald by developing the protocol that was used.   Grunwald hid his Sapiens-related activities from VasoNova.

34.    On January 6, 2009, Grunwald unexpectedly notified VasoNova that he would be resigning as Chief Technology Officer.  After taking vacation time and unpaid leave, his last day of employment was February 3, 2009.  Grunwald told VasoNova that he would be "pursuing a teaching opportunity in Paris, France," but concealed that he intended to pursue his competing business, which he had begun while at VasoNova, using VasoNova's Company Confidential Information and intellectual property.

35.    Beginning even before his resignation, Grunwald negotiated with MedComp regarding Grunwald assisting MedComp in developing products that would directly compete with VasoNova's products.  The relationship between Grunwald and MedComp lasted until sometime

COMPLAINT AND
DEMAND FOR JURY TRIAL

in the summer of 2009.   Upon information and belief, Grunwald disclosed and/or used VasoNova's Company Confidential Information in working with MedComp.

36.     Beginning February 3, 2009 or even earlier, Grunwald worked with MedComp to design and test competitive products.

37.     On June 12, 2009, Grunwald filed a first provisional patent application on Sapiens TLS technology that he developed while still employed by VasoNova.  He filed subsequent provisional patent applications on Sapiens TLS technology in August 2009, February 2010, and September 2010.

38.     On June 14, 2010, Grunwald filed a non-provisional patent application claiming priority to the June 2009 provisional application.  That application was published by the USPTO on December 16, 2010, with publication number 2010/0317981 A1.

39.     On August 10, 2010, Grunwald filed a non-provisional patent application claiming priority to both the June 2009 and August 2009 provisional applications, and as a continuation-in-part of the June 2010 non-provisional application.  That application was published by the USPTO on December 16, 2010, with publication number 2010/0318026 A1.

40.     On February 2, 2011, Bard filed a non-provisional patent application claiming priority to both the June 2009 and February 2010 provisional applications, and as a continuation-in-part of the August 2010 non-provisional application.  The February 2, 2011 application was published by the USPTO on August 11, 2011, with publication number 2011/0196248 A1.

41.     On September 22, 2011 Bard filed a non-provisional patent application claiming priority to all four of the June 2009, August 2009, February 2010, and September 2010 provisional applications, and as a continuation-in-part of the February 2, 2011 non-provisional application.  The February 2, 2011 application was published by the USPTO on March 8, 2012, with publication number 2012/0059270 A1.

42.     The foregoing patent applications are collectively referred to herein as the "Grunwald Patent Applications."

43.     Grunwald did not disclose these inventions to VasoNova or prepare assignments to VasoNova of the Grunwald Patent Applications.  Instead, in May 2009, Grunwald incorporated a

COMPLAINT AND
DEMAND FOR JURY TRIAL

new company, Romedex, to commercialize the Sapiens TLS product that he had taken from VasoNova. He subsequently purported to assign the Grunwald Patent Applications on Sapiens TLS technology to Romedex.

44. Grunwald and Romedex subsequently obtained 510(k) clearance from the U.S. Food and Drug Administration to market Sapiens TLS, using clinical trial information generated while Grunwald was still employed at VasoNova.

45. Grunwald used VasoNova's inventions, ideas and Company Confidential Information to further develop the Sapiens TLS technology and business.

46. On September 23, 2010, MedComp sued Grunwald for breach of contract, breach of fiduciary duty, misappropriation of trade secrets and conversion, alleging that Grunwald's Sapiens TLS product belonged to MedComp.

47. On October 25, 2010, Grunwald answered MedComp's complaint and alleged that the Sapiens TLS product was conceived and developed *before* Grunwald's involvement with MedComp – *i.e.*, while he was still employed by VasoNova. MedComp and Grunwald settled the lawsuit in November 2010.

48. In late 2010, Grunwald sold Sapiens TLS to Bard, another competitor of VasoNova, for an undisclosed sum.

49. On information and belief, Romedex, through Grunwald, purported to assign the Grunwald Patent Applications to Bard on December 7, 2010.

## THE ARBITRATION

50. The arbitration clause in the Confidentiality Agreement requires VasoNova to resolve its disputes with Grunwald by bringing an arbitration against Grunwald in California, which arbitration is to be governed by the arbitration rules set forth in California Code of Civil Procedure Sections 1280 through 1294.2.

51. On April 14, 2011, VasoNova commenced an arbitration against Grunwald in California (hereinafter the "Arbitration"). The parties engaged in discovery throughout 2011 and early 2012.

52. On April 20, 2012, more than one year into the Arbitration, Grunwald filed a

COMPLAINT AND
DEMAND FOR JURY TRIAL

1  motion for leave to amend his answer in the Arbitration to assert a new defense of failure to name

2  an indispensible party.  In the April 20, 2012 motion, Grunwald claimed for the first time that

3  both Bard and Romedex were indispensible parties to the Arbitration.

4      53.  Neither Bard nor Romedex is a party to the Confidentiality Agreement or

5  Separation Agreement, including either Agreement's arbitration provisions.

6      54.  According to Grunwald, VasoNova's claims implicate third-party defendants not

7  subject to the arbitration agreements.  Joinder of Grunwald, Romedex and Bard in this action is

8  necessary to protect the parties from potentially conflicting, piecemeal resolutions in multiple

9  forums.

10      55.  Pursuant to California Code Civ. Pro. § 1281.2(c), which is among the code

11  sections that governs the resolution of disputes between VasoNova and Grunwald pursuant to the

12  Confidentiality Agreement, VasoNova is entitled to bring this action.

13  **COUNT I – BREACH OF CONTRACT**

14      56.  VasoNova incorporates paragraphs 1-55 as though fully set forth herein.

15      57.  Grunwald violated the Confidentiality Agreement by competing with VasoNova

16  during his employment by beginning development and commercialization of a competing product,

17  Sapiens TLS.

18      58.  Grunwald further violated the Confidentiality Agreement by failing to disclose to

19  VasoNova ideas and inventions relating to Sapiens TLS during his employment.

20      59.  Grunwald, both individually and through Romedex, further violated the

21  Confidentiality Agreement by using VasoNova's Company Confidential Information on his own

22  behalf and on behalf of others during and after his employment.

23      60.  As the result of the foregoing breaches of contract, VasoNova has suffered

24  damages in an amount greater than $75,000, the actual amount to be proven at trial.

25  **COUNT II – BREACH OF FIDUCIARY DUTY**

26      61.  VasoNova incorporates paragraphs 1-60 as though fully set forth herein.

27      62.  As an officer of VasoNova, Grunwald owed a fiduciary duty to VasoNova.

28      63.  As described above, Grunwald, both individually and through Romedex, breached

COMPLAINT AND
DEMAND FOR JURY TRIAL

- 10 -

his fiduciary duty to VasoNova, including by acting contrary to VasoNova's best interest, usurping corporate opportunities for his own gain, failing to disclose Company Confidential Information and inventions developed during his employment to VasoNova, and by using and disclosing Company Confidential Information for his own gain while an officer of VasoNova.

64. As the result of Grunwald's breaches of fiduciary duty, VasoNova has suffered damages in an amount greater than $75,000, the actual amount to be proven at trial.

## COUNT III – FRAUD

65. VasoNova incorporates paragraphs 1-64 as though fully set forth herein.

66. Grunwald had, and continues to have, contractual and fiduciary duties to disclose material information to VasoNova, including the Sapiens TLS technology and his competitive activities.

67. Grunwald failed to disclose material information to VasoNova.

68. Grunwald misrepresented his activities and intentions to VasoNova.

69. Grunwald intended for VasoNova to believe his deceptions and to rely on his material omissions.

70. VasoNova relied upon Grunwald's material omissions and misrepresentations to its detriment, at a minimum by continuing to pay Grunwald while he deceived and competed with VasoNova.

71. VasoNova is entitled to compensatory damages in an amount greater than $75,000, the actual amount to be proven at trial.

72. Because Grunwald's conduct as alleged herein and to be proven at the trial was willful and malicious, VasoNova is further entitled to punitive damages.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT

73. VasoNova incorporates paragraphs 1-72 as though fully set forth herein.

74. VasoNova and Grunwald are parties to the Confidentiality Agreement.

75. Grunwald, both individually and through Romedex, purported to sell to Bard, VasoNova's confidential and proprietary information, including the Grunwald Patent Applications and the FDA 510(k) approval for Sapiens TLS.

COMPLAINT AND
DEMAND FOR JURY TRIAL

76. On information and belief, Romedex and Bard knew or should have known that Grunwald was contractually obligated to maintain VasoNova's Company Confidential Information in confidence during the term of his employment and thereafter, and therefore that Grunwald had no authority to disclose to Romedex and Bard VasoNova's confidential and proprietary information, including the Grunwald Patent Applications and the FDA 510(k) approval.

77. On information and belief, Romedex and Bard knew or should have known that Grunwald's Confidentiality Agreement included an assignment to VasoNova of all ideas and inventions made, developed or conceived during Grunwald's employment at VasoNova, and therefore Grunwald had no authority or ability to sell and/or assign VasoNova's confidential and proprietary information, including the Grunwald Patent Applications and the FDA 510(k) approval.

78. Romedex and Bard tortiously interfered with VasoNova's contract with Grunwald, causing VasoNova to be injured and to lose money and property.

79. VasoNova is entitled to compensatory damages from Grunwald, Romedex, and Bard in an amount greater than $75,000, the actual amount to be proven at trial.

## COUNT VI – UNJUST ENRICHMENT

80. VasoNova incorporates paragraphs 1-79 as though fully set forth herein.

81. Grunwald, Romedex and Bard have been unjustly enriched by their use and enjoyment of VasoNova's confidential and proprietary information, including the Grunwald Patent Applications and FDA 510(k) approval.

82. VasoNova is entitled to damages from Grunwald, Romedex, and Bard for their unjust enrichment in an amount greater than $75,000, the actual amount to be proven at trial.

## COUNT VI – UNFAIR COMPETITION UNDER
## CAL. BUS. & PROF. CODE § 17200 ET SEQ.

83. VasoNova incorporates paragraphs 1-82 as though fully set forth herein.

84. The activities of Grunwald, Romedex and Bard alleged herein constitute unlawful, unfair and fraudulent practices in violation of the Unfair Competition Law, §§ 17200 *et seq.* of

COMPLAINT AND
DEMAND FOR JURY TRIAL

1    the California Business & Profession Code.

2        85.    VasoNova has been injured and has lost money and property as the result of the

3    Defendants' unfair competition.

4        86.    The Defendants have profited from their unlawful and unfair business practices.

5        87.    VasoNova is entitled to damages from Defendants' unfair competition in an

6    amount greater than $75,000, the actual amount to be proven at trial.

7                            <u>**COUNT VII – QUIET TITLE**</u>

8        88.    VasoNova incorporates paragraphs 1-87 as though fully set forth herein.

9        89.    VasoNova is the true titleholder to the Grunwald Patent Applications and other

10   ideas and assets relating to Sapiens TLS, by virtue of the assignment clause in the Confidentiality

11   Agreement.

12       90.    Grunwald breached the Confidentiality Agreement by failing to execute

13   documents to memorialize his assignment of the Sapiens TLS inventions contained in the

14   Grunwald Patent Applications to VasoNova so that the assignments could be recorded with the

15   USPTO, and by purporting to assign the Sapiens TLS technology to Romedex and Bard.

16       91.    Grunwald falsely claimed title to the Sapiens TLS inventions in the Grunwald

17   Patent Applications and wrongfully signed fraudulent assignments of those applications first to

18   Romedex and then to Bard with the result that the records of the USPTO now inaccurately show

19   Bard as the purported owner of the Grunwald Patent Applications.

20       92.    Grunwald has a continuing duty under the Confidentiality Agreement to provide

21   VasoNova with clear title to the Sapiens TLS inventions, including the Grunwald Patent

22   Applications, which he will not fulfill unless enjoined by the Court to do so.

23       93.    VasoNova is entitled to and seeks a declaration that it is the true owner of the

24   Sapiens TLS technology invented by Grunwald, including the Grunwald Patent Applications.

25       94.    Absent injunctive relief, VasoNova will be irreparably harmed by Grunwald's,

26   Romedex's, and Bard's failure to execute and deliver documents evidencing the assignment to

27   VasoNova for recordation at the USPTO.

28       95.    VasoNova is entitled to and seeks an injunction requiring Grunwald, Romedex and

COMPLAINT AND
DEMAND FOR JURY TRIAL

- 13 -

1   Bard each to provide all reasonable assistance and sign all appropriate documents to confirm

2   VasoNova's title and to correct the records of the USPTO.

3        96.    VasoNova has no adequate remedy at law.

4                                     **PRAYER FOR RELIEF**

5       WHEREFORE, VasoNova prays that the Court:

6       A.    Award VasoNova money damages in an amount sufficient to compensate

7   VasoNova for Grunwald's breach of contract, breach of fiduciary duty, fraud, unfair competition

8   and unjust enrichment;

9       B.    Award VasoNova money damages in an amount sufficient to compensate

10   VasoNova for Romedex's and Bard's tortious interference with contract, unfair competition and

11   unjust enrichment.

12       C.    Quiet title in the Grunwald Patent Applications, and declare that VasoNova is the

13   owner of the Grunwald Patent Applications;

14       D.    Issue an injunction prohibiting each of Grunwald, Romedex and Bard from using

15   VasoNova's Company Confidential Information;

16       E.    Issue an injunction requiring each of Grunwald, Romedex and Bard to provide all

17   reasonable assistance and execute all documents necessary to confirm title to the Grunwald Patent

18   Applications in VasoNova to correct the records of the USPTO;

19       F.    Award VasoNova punitive damages;

20       G.    Declare that VasoNova is the prevailing party in this case and award VasoNova its

21   attorneys' fees and expenses;

22       H.    Award VasoNova any and all other relief that the Court finds to be just and proper.

23

24

25

26

27

28

COMPLAINT AND
DEMAND FOR JURY TRIAL

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, VasoNova demands a trial by jury of all issues triable of right by jury.

Dated: May 11, 2012                    JONES DAY

By: _____
    Iman Lordgooei

Attorneys for Plaintiff

COMPLAINT AND
DEMAND FOR JURY TRIAL