IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VASONOVA INC.,

    Plaintiff,

  v.

SORIN GRUNWALD; ROMODEX INTERNATIONAL SRL; and BARD ACCESS SYSTEMS, INC.,

    Defendants.

No. C 12-02422 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BARD ACCESS SYSTEMS, INC.'S MOTION TO DISMISS AND VACATING HEARING**

## INTRODUCTION

In this intellectual-property dispute, defendant Bard Access Systems, Inc. moves to dismiss plaintiff's first amended complaint pursuant to FRCP 12(b)(6). For the reasons stated below, defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff VasoNova, Inc., a developer and manufacturer of medical devices, is a Delaware corporation with its principal place of business in San Mateo County (First Amd. Compl. ¶ 1). In its early days as a start-up, VasoNova sought to develop and commercialize a system that would allow physicians to efficiently place catheters without the need for an x-ray (*id*. at ¶¶ 13, 20). VasoNova hired defendant Sorin Grunwald as its chief technology officer to aid in developing this system (*id*. at ¶ 1). Through his role as CTO, Grunwald was allegedly "intimately involved in every aspect of the development of VasoNova's VPS (Vascular

Positioning System) product." As VasoNova began attracting investors, it entered into confidentiality agreements with its employees. Grunwald signed a confidentiality, invention assignment, and arbitration agreement. Grunwald agreed that all inventions he made while employed would belong to his employer, even those made on his own time (*id.* at ¶ 17). Additionally, upon Grunwald's resignation from VasoNova, he signed a separation agreement, which reaffirmed his agreement to abide by the terms of the confidentiality agreement (*id.* at ¶¶ 18–20).

After his resignation from VasoNova, Grunwald began filing patent applications for a product called "Sapiens TLS." He did not inform VasoNova of the patent applications or assign the patents to VasoNova (*id.* at ¶¶ 34–40). VasoNova claims ownership of the Sapiens technology and alleges that Grunwald developed the technology while still employed at VasoNova. Grunwald denies these claims. After obtaining the patents, Grunwald incorporated Romedex International and assigned the patents applications and Sapiens technology to his newly created company (*id.* at ¶¶ 37, 41). He then sold the Sapiens technology to a VasoNova competitor, defendant Bard Access Systems Inc., a Utah corporation (*id.* at ¶ 4). After Romedex, through Grunwald, purported to assign the patent applications, Bard filed various non-provisional applications with the USPTO which were later published (*id.* at ¶¶ 46–49).

In this civil action, VasoNova is seeking relief from Grunwald, Romedex, and Bard regarding the ownership and use of the Sapiens technology (*id.* at ¶ 1). In response to VasoNova's first amended complaint, and pursuant to FRCP 12(b)(6), defendant Bard moves to dismiss each count alleged against it, including: trade secret misappropriation, conversion, unfair competition, tortious interference with contract, declaratory judgment, and quiet title.

**ANALYSIS**

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and considered in the light most favorable to the nonmoving party. *Ibid.*

> While a complaint attacked by a FRCP 12 (b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations

2

> to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In short, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570. Where a court dismisses for failure to state a claim pursuant to FRCP 12(b)(6), it should normally grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

Both VasoNova and Bard have submitted several requests for judicial notice (Dkt. Nos. 44, 65). As the documents are not necessary to this order, there is no need to wade through the process of taking judicial notice of them. The requests for judicial notice are **DENIED**.

**1. TRADE SECRET MISAPPROPRIATION.**

California has adopted the Uniform Trade Secrets Act. California Civil Code Section 3426, *et. seq.*, codifies the basic principles of common law trade secret protection. A trade secret:

> [M]eans information, including a formula, patterns, compilation, program, device, method, technique or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

To state a claim under CUTSA, a plaintiff must plead facts sufficient to show (1) the plaintiff owned a trade secret; (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means; and (3) the defendant's actions damaged the plaintiff. *CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008) (citing *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003)).

3

### A. Identifying the Trade Secret with Reasonable Particularity.

According to California Civil Procedure Code Section 2019.210, "[i]n any action alleging the misappropriation of a trade secret . . . under CUTSA, before commencing discovery relating to the trade secret, the party alleging misappropriation shall identify the trade secrets with reasonable particularity . . . ." The California Court of Appeal has interpreted "reasonable particularity" to include enough detail so that the defendant is able to learn the boundaries of the alleged trade secret in order to investigate defenses. *See Brescia v. Angelin*, 172 Cal. App. 4th 133, 138 (2009). "The statute . . . does not create a procedural device to litigate the ultimate merits of the case — that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Id*. at 149. Accordingly, trade secret designation is to be liberally construed, and reasonable doubts regarding its adequacy are to be resolved in favor of allowing discovery to go forward. *Id*. at 152.

The first amended complaint alleges that the information within the patent applications constituted the misappropriated trade secrets. This information includes, for example, "the software and operation of the Sapiens TLS product" and implementation information such as the "devices, algorithms, and processes useful for catheter guidance" (First Amd. Compl. ¶ 79). Our court of appeals has recognized that software can constitute a trade secret. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1089–90 (1990). The first amended complaint identifies the misappropriated trade secrets with enough particularity to put Bard on notice of VasoNova's claims at this initial pleading stage.

### B. Whether the Trade Secret was Public Before Bard's Involvement.

Bard alleges that the trade secrets identified in the first amended complaint do not constitute trade secrets because they were publicly disclosed by Grunwald and then, again, by publication of the patent applications. *First*, Bard's argument that once the patent applications were published, the protection of the alleged trade secrets was forfeited fails because Bard acknowledges that it acquired Sapiens TLS prior to the publication of the patent applications (Dkt. 43 at 10). The implications of Grunwald having already filed the patent applications prior to Bard's involvement and whether Bard was able to file a timely declaration of express

4

abandonment involve questions of fact requiring discovery. *Second*, as to Bard's allegations that Grunwald had already disclosed the trade secrets during the clinical studies, testing, and demonstrations of the Sapiens TLS technology, the issue remains of which trade secrets, if any, were disclosed. Accordingly, the aforementioned questions regarding whether the trade secrets were made public prior to Bard's involvement require a more complete record.

### C. Ownership is a Requirement Under CUTSA.

Bard next alleges that the first amended complaint fails because VasoNova never possessed any of the Sapiens TLS assets developed by Grunwald, or the patent applications, such that it could protect the secrecy of this information from others in the industry. VasoNova maintains that ownership, as opposed to actual possession, is all that is required. The California authorities are seemingly in conflict. *See Sargent Fletcher, Inc.*, 110 Cal. App. 4th at 1665 ("[A] prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff *owned* a trade secret . . . .") (emphasis added)*; but see Silvaco Data Systems v. Intel* Corp., 184 Cal. App. 4th 210, 220 (2010), *overruled on other grounds* ("The *sine qua non* of a trade secret, then, is the plaintiff's possession of information of a type that can, at the possessor's option, be made known to others, or withheld from them, *i.e.*, kept secret").

There is no physical possession requirement within the language of CUTSA. To agree with Bard's position would require writing into the statute something that is not there. This order declines to do so. Because plaintiff alleges that it is the rightful owner of the misappropriated trade secrets, and therefore has the legal right to possess those trade secrets, defendant's motion to dismiss plaintiff's trade secret misappropriation claim is **DENIED**.

\*      \*      \*

The essence of the first amended complaint is that Grunwald developed the inventions while he was employed by VasoNova and therefore Grunwald should have turned the inventions over to VasoNova before he left but instead stole them, that is, stole VasoNova's inventions, which at that stage were trade secrets, and then sought to convert these secrets to patents. This is enough to satisfy the pleading standards in a trade secrets claim.

5

### 2. VASONOVA'S CLAIMS FOR CONVERSION AND UNFAIR COMPETITION ARE PREEMPTED BY CUTSA.

VasoNova's claims for conversion and unfair competition under California Business and Professional Code Section 17200 are preempted by CUTSA. *See* Cal. Civ. Code § 3426.7(b). Both claims are "based upon the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009). If "trade secret" facts are removed, the conversion and unfair competition claims fail to retain sufficient independent facts to survive preemption. Accordingly, defendant's motion to dismiss plaintiff's claims for conversion and unfair competition is **GRANTED**.

### 3. TORTIOUS INTERFERENCE WITH CONTRACT.

In order for a plaintiff to state a claim for intentional interference with contractual relations, they must show: (1) that there was a valid contract; (2) the defendant had knowledge of this contract; (3) the defendant's intentional acts were designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990). When showing "resulting damage":

> It has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such was the moving cause thereof.

*Dryden v. TriValley Growers*, 65 Cal. App. 3d 990, 997 (1977) (citing *Augusting v. Trucco*, 124 Cal. App. 2d 229, 246 (1954)). VasoNova has failed to allege that Bard was the "moving cause" of Grunwald's breach of the confidentiality and separation agreements. The first amended complaint demonstrates that the performance of the agreements had been abandoned and discontinued by Grunwald two years prior to Bard's involvement (First Am. Compl. ¶¶ 26–27, 29–33, 35, 36–43, 81). Therefore, defendant's motion to dismiss plaintiff's tortious interference with contract claim for relief is, as to Bard, **GRANTED**.

6

### 4. DECLARATORY JUDGMENT.

VasoNova seeks declaratory relief that it is the true and rightful owner of the patent applications. This order does not agree with Bard's argument that disputes over ownership of patent applications are not ripe for judicial determination. *But see Display Research Labs., Inc. v. Telegen Corp.*, 133 F. Supp. 2d 1170, 1175 (N.D. Cal. 2001) (Illston, J.) ("the scope of rights appurtenant to a patent application is much less certainly defined than that of a granted patent.") (citing *Westinghouse Electric v. Formica Insulatin*, 266 U.S. 342, 352–53 (1924)). There is no dispute among the parties that patent applications, just like patents, are property. Because the right of ownership of such property is in dispute, a ripe controversy exists. Accordingly, defendant's motion to dismiss plaintiff's claim for declaratory relief is **DENIED**.

### 5. QUIET TITLE.

The first amended complaint has not met the requirements set forth in California Code of Civil Procedure Section 761.020. Admittedly, VasoNova cannot do so because the plain language of the statute addresses only real and tangible personal property, not intangible personal property. In light of the lack of authority cited by plaintiff establishing that quiet title in patent applications is legally cognizable, this order declines to exercise its discretion in doing so. Therefore, defendant's motion to dismiss the plaintiff's claim for quiet title is **GRANTED**.

## CONCLUSION

Defendant Bard's motion to dismiss plaintiff's first amended complaint is **DENIED IN PART AND GRANTED IN PART**. The Court doubts that the claims dismissed could be fixed by amendment but will allow plaintiff an opportunity as follows. Plaintiff may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, notice on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion and plaintiff must plead their best case. Any such motion should clearly explain how the amendments to the complaint cure the deficiencies identified

herein. Failing such a timely motion, the answer will be due **21 CALENDAR DAYS** after the deadline. The hearing scheduled for September 27 is **VACATED**.

**IT IS SO ORDERED.**

Dated: September 18, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE