IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VASONOVA, INC., a Delaware corporation,

    Plaintiff,

v.

SORIN GRUNWALD, an individual, ROMEDEX INTERNATIONAL SRL, a Romanian company, and BARD ACCESS SYSTEMS, INC., a Utah corporation,

    Defendants.
_____/

ROMEDEX INTERNATIONAL SRL, a Romanian company, and SORIN GRUNWALD, an individual,

    Counterclaimants,

v.

VASONOVA, INC., a Delaware corporation, TELEFLEX, INC., a Delaware corporation, and TELEFLEX MEDICAL, INC., a California corporation,

    Counterdefendants.
_____/

No. C 12-02422 WHA

**ORDER GRANTING IN PART AND DENYING IN PART COUNTER-DEFENDANTS' MOTIONS TO DISMISS COUNTERCLAIMS AND VACATING HEARING**

**INTRODUCTION**

In this intellectual property dispute involving a catheter-guidance product, counterdefendant and third-party defendants move to dismiss all counterclaims. For the reasons stated below, the motions are **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

**1.    THE COMPLAINT.**

Plaintiff VasoNova, Inc., is a developer and manufacturer of medical devices (First Amd. Compl. ¶ 1). In its early days as a start-up, VasoNova sought to develop and commercialize a system that would allow physicians to efficiently place catheters without the need for an x-ray (*id*. at ¶¶ 13, 20). VasoNova hired defendant Sorin Grunwald as its chief technology officer to aid in developing this system (*id*. at ¶ 1). Through his role as CTO, Grunwald was "intimately involved in every aspect of the development of VasoNova's VPS (Vascular Positioning System) product," which uses both internal ECG and Doppler sonogram signals to locate the tip of a venous catheter as it is inserted. As VasoNova began attracting investors, it entered into confidentiality agreements with its employees. Grunwald signed a confidentiality, invention assignment, and arbitration agreement. Additionally, upon Grunwald's resignation from VasoNova, he signed a separation agreement, which reaffirmed his agreement to abide by the terms of the confidentiality agreement (*id*. at ¶¶ 18–20).

After his resignation from VasoNova, Grunwald began filing patent applications for a product called "Sapiens TLS," which locates the position of a tip of a venous catheter using only ECG signals. After obtaining the patents, Grunwald incorporated Romedex International SRL in Romania and assigned the patents to his newly created company (*id*. at ¶¶ 37, 41). Romedex then sold the Sapiens technology to Bard Access Systems, Inc., a competitor of VasoNova. Via earlier arguments, VasoNova herein claims ownership of the Sapiens technology and alleges that Grunwald developed the technology while still employed at VasoNova. Grunwald denies these claims.

Prior to the sale of Sapiens to Bard, Romedex was in negotiations with Teleflex Medical, Inc., on behalf of Teleflex, Inc., regarding acquisition of Romedex. Teleflex Medical signed a non-disclosure agreement and conducted due diligence. Teleflex's efforts to acquire Romedex failed and negotiations ended without the culmination of an agreement (Grunwald Decl. ¶ 10). Teleflex then acquired VasoNova in January 2011 (*id*. at ¶ 12). Teleflex is now VasoNova's parent company.

In November 2010, VasoNova obtained FDA clearance for its VPS product that employs the Sapiens technology (Grunwald Decl. ¶ 13). Teleflex has begun marketing VasoNova's VPS product under Teleflex's name in the United States and Europe (*id*. at 17). VasoNova is seeking relief from Grunwald, Romedex, and Bard regarding the ownership and use of the Sapiens technology.

## 2. THE COUNTERCLAIMS.

Following the filing of plaintiff's first amended complaint, defendants Grunwald and Romedex filed counterclaims against VasoNova, Teleflex Medical, and Teleflex (collectively "counterdefendants").

### A. Romedex's Counterclaims.

Romedex alleges that Teleflex Medical and Teleflex "engaged in misrepresentations concerning the intent behind their dealings with Romedex" (Dkt. No. 76 ("RCC") ¶ 36). In October 2009, Romedex and Teleflex Medical entered into a confidentiality agreement regarding Teleflex Medical's intent to distribute Sapiens and acquire certain assets related to Sapiens (*ibid.*). Pursuant to this agreement, from October 2009 to September 2010, Romedex allegedly disclosed significant confidential information and trade secrets to Teleflex Medical related to catheter tip placement technologies and "ECG-only" catheter guidance (*id*. at ¶ 24). Ultimately, Romedex declined to enter into a transaction with Teleflex and Teleflex Medical. In December 2010, Romedex sold Sapiens to Bard (*id*. at ¶ 15). In January 2011, Teleflex acquired VasoNova.

Romedex alleges that Teleflex was negotiating an acquisition deal with VasoNova since the beginning of 2010 and that instead of "negotiating in good faith to possibly acquire Romedex technology, the intent was to either get the technology at a below-market price or, if Romedex did not take the deal, simply disclose the technology to VasoNova" (*id*. at ¶¶ 26, 36). Romedex points to the fact that in November 2010, VasoNova filed a provisional patent application allegedly containing confidential information which Romedex had earlier disclosed to Teleflex Medical and Teleflex under the confidentiality agreement (*id*. at 28).

3

1  Romedex alleges that VasoNova knowingly accepted Romedex's confidential information from
2  Teleflex Medical.

### B. Grunwald's Counterclaims.

In his amended counterclaims, defendant Grunwald alleges that he represented in good faith to Bard and Romedex that he was the rightful owner of the intellectual property at issue. Pursuant to California Labor Code Section 2870, Grunwald alleges that he was not required to disclose or assign to VasoNova any of his Sapiens technology or patent applications. According to Grunwald's counterclaims, VasoNova allowed Grunwald time to work "outside" of VasoNova. During this time, Grunwald started to evaluate an "ECG-only" catheter guidance system after VasoNova repeatedly represented to him that such an "ECG-only" system was not related to VasoNova's business and was not in VasoNova's interest at that time (Dkt. No. 85 ("GCC") ¶ 12).

Grunwald also alleges that he created the trademark and trade name "VasoNova" (*id*. at ¶ 26). Prior to the founding of VasoNova, Inc., Grunwald began using the name "VasoNova" to brand devices that he was developing. Grunwald conducted evaluation studies to demonstrate products and market research in conjunction with the products (*ibid*.). Grunwald registered the domain name "vasonova.com" in his own name with his own money (*id*. at ¶ 27). In December 2005, Grunwald and VasoNova, Inc., allegedly entered into an oral contract regarding the use of the "VasoNova" trademark by VasoNova, Inc. Under this contract, VasoNova, Inc., was permitted to use the "VasoNova" trademark free of charge so long as VasoNova, Inc., was not acquired by another company (*id*. at ¶ 28). In 2009 when Grunwald left VasoNova, Inc., the company registered the "VasoNova" trademark in its own name, which it then purported to sell to Teleflex for $2.8 million (*id*. at ¶ 33). Grunwald alleges that he was (and still is) the rightful owner of the "VasoNova" trademark.

### ANALYSIS

Counterdefendants now move to dismiss all counterclaims for lack of standing and failure to state a claim. Specifically, counterdefendants move to dismiss all of Bard's counterclaims —

4

trade secret misappropriation, breach of contract, fraud, and declaratory judgment; and Grunwald's counterclaims — breach of contract and declaratory judgment.

Lack of Article III standing requires dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1). *Simmonds v. Credit Suisse Sec.*, 638 F.3d 1072, 1082 (9th Cir. 2011). Article III standing requires the demonstration of three elements: (1) plaintiff suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). For purposes of ruling on a motion to dismiss for lack of standing, all material allegations of the complaint are accepted as true and the complaint is construed in favor of the complaining party. Standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500–01 (1975).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and considered in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). A complaint, on its face, needs to be plausible, meaning that "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it should normally grant leave to amend unless it determines that the pleading could not possible be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

5

### 1. ROMEDEX'S TRADE SECRET MISAPPROPRIATION COUNTERCLAIM.

To state a claim under the California Uniform Trade Secrets Act, a plaintiff must plead facts sufficient to show that: (1) the plaintiff owned a trade secret; (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means; and (3) the defendant's actions damaged the plaintiff. *Sargent Fletcher, Inc. v. Able Corp.,* 110 Cal. App. 4th 1658, 1665 (2003). Citing *Memory Corp. V. Ky. Oil Tech., N.V.*, 2006 WL 3734384 (N.D. Cal. Dec. 18, 2006) (Judge Ronald M. Whyte), counterdefendants argue that Romedex lacks Article III standing and/or failed to sufficiently plead its counterclaim for trade secret misappropriation because Romedex no longer owns any interest in the intellectual property at issue. This order disagrees.

In *Memory*, the counterclaimant sued the counterdefendant for trade secret misappropriation that occurred years prior when the counterclaimant was not the owner of the trade secrets. Because the counterclaimant was not the trade secret owner when the misappropriation was alleged to have occurred, the counterdefendant argued that the counterclaimant only had standing if each of its assignments in chain of title expressly conveyed pre-existing causes of action. The district court disagreed and held that "it makes more sense to allow the current owner to sue for past misappropriation than a prior owner." *Id*. at 3. In doing so, however, the court explicitly noted that "California courts have not explicitly addressed, whether, by default, causes of action for trade secret misappropriation are transferred with the trade secrets themselves. The statute, however, is silent as to the issue." *Ibid*.

Since *Memory*, the California courts have addressed this issue. In *Jasmine Networks v. Superior Court*, 180 Cal. App. 4th 980, 987 (2009), the California Court of Appeal rejected the defendant's argument that the plaintiff lacked standing to bring a trade secret misappropriation claim because the plaintiff sold its rights in the alleged trade secrets. In doing so, the court explicitly rejected the defendant's efforts to "conjure up a current ownership rule," and noted the "complete absence of authority adopting or even proposing such a [current ownership] rule." *Id*. at 996. This order agrees and similarly declines to write into the statute a requirement that is not there.

6

Counterdefendants also argue that Romedex has failed to identify "any injury in fact that [it] has suffered with respect to the alleged misappropriation of trade secrets claim" (Dkt. No. 100 at 7). Romedex alleges that it suffered damages as a result of the misappropriation (RCC ¶¶ 44–48). At this stage of the litigation, such damage allegations are sufficient. A plaintiff's allegation that he has, as a "direct and proximate result" of defendant's violation, "sustained special and general damages" suffices to withstand a Rule 12(b)(6) motion. *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 799 (9th Cir. 1996). Accordingly, counterdefendants' motion to dismiss Romedex's trade secret misappropriation counterclaim is **DENIED**.

### 2. BREACH OF CONTRACT COUNTERCLAIMS.

#### A. Romedex.

Teleflex Medical argues that Romedex retains no standing to sue under the purported confidentiality agreement because possession and rights in all Sapiens assets were transferred to Bard. Teleflex Medical, however, offers no authority for the proposition that *current* ownership of confidential information is necessary to maintain a breach of contract claim. "Once entered into, a contract gives rise to an obligation or legal duty, enforceable in an action law." Witkin Summary of Cal. Law § 1 (10th Ed. 2005). Thus, Teleflex Medical's obligation to comply with the alleged confidentiality agreement arises out of the agreement itself and is not contingent on whether Romedex currently owns the confidential information.

Romedex alleges that: (1) it entered into a confidentiality agreement with Teleflex Medical; (2) Teleflex Medical breached the agreement by disclosing information to VasoNova, a third-party; and (3) Romedex was damaged as a result. Accordingly, Romedex has standing to pursue its breach of contract counterclaim. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010). Counterdefendants' motion to dismiss Romedex's breach of contract claim is **DENIED**.

#### B. Grunwald.

Grunwald alleges that he and VasoNova entered into an oral contract that "allowed Vasonova, Inc., the company, to use Grunwald's 'Vasonova' trade name and trademark free

7

1  of charge so long as VasoNova, Inc., was not acquired by another company" (GCC ¶ 28).
2  Counterdefendants argue that because Grunwald failed to allege any consideration from
3  VasoNova for this alleged free use of the mark, his breach of contract counterclaim must fail
4  (Dkt. No. 108 at 7). This order agrees.

5  Under California law, consideration is an essential element of a contract. CAL. CIV.
6  CODE § 1550. "A contract is supported by sufficient consideration if there is some benefit
7  to the promisor or detriment to the promisee." *Sandrini v. Branch*, 32 Cal. App. 2d 707,
8  709 (1939). Grunwald failed to plead any consideration or mutual obligation given to him in
9  exchange for VasoNova's agreement to restrict its use of the trademark subject to Grunwald's
10 terms and conditions. Although Grunwald alleges that in the event VasoNova was acquired
11 by another company, he "would be willing to negotiate a sales price," standing alone, this does
12 not constitute valid consideration. Consequently, Grunwald has not pled the existence of a valid
13 contract. Counterdefendants' motion to dismiss Grunwald's breach of contract claim is therefore
14 **GRANTED.**

15     **3. FRAUD.**

16 The elements of fraud under California law are: (1) a misrepresentation; (2) with
17 knowledge of its falsity; (3) with the intent to induct another's reliance on the misrepresentation;
18 (4) justifiable reliance; and (5) resulting damage. *Kearns v. Ford Motor Co.*, 567 F.3d 1120,
19 1126 (9th Cir. 2009). Under Rule 9(b), fraud-based claims must be pled with "particularity."
20 Thus, "[a]verments of fraud must be accompanied by the who, what, when, where and how
21 of misconduct charged" to give defendants notice of the particular conduct they must defend.
22 *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations
23 omitted).

24 This order finds that Romedex has failed to satisfy Rule 9(b)'s heightened pleading
25 standards. The counterclaim makes the general assertion that "Teleflex Medical and Teleflex
26 engaged in misrepresentations concerning the intent behind their dealings with Romedex"
27 (RCC ¶ 36). The counterclaim, however, does not identify who made the alleged
28 representations, when and where these misrepresentations were made, or what was specifically

1  said. Furthermore, Romedex failed to plead why the alleged representation that Teleflex
2  Medical "negotiat[ed] in good faith to possibly acquire Romedex technology," was false when
3  made. Romedex admits that it was Romedex, and not Teleflex, who ultimately declined to enter
4  into a transaction. Furthermore, Teleflex did not acquire VasoNova until after Romedex opted to
5  sell the assets to Bard. Accordingly, Romedex has failed to plead specific facts in accordance
6  with Rule 9(b). Counterdefendants' motion to dismiss Romedex's fraud claim is **GRANTED**.

### 4. DECLARATORY RELIEF.

Under the Declaratory Judgment Act (28 U.S.C. 2201), a court may assert jurisdiction over any "actual controversy." *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 239–41 (1937).

#### A. Romedex.

Romedex seeks declaratory judgment that it was the rightful owner of the Grunwald patent applications and Sapiens assets before they were assigned to Bard (RCC at 31). Counterdefendants argue that because Romedex concedes that it no longer owns any of the Sapiens assets, it lacks standing to bring any claim requesting a declaration of prior ownership of those assets (Dkt. No. 100 at 8). Because all of the parties involved in this action have presented claims related to the intellectual property at issue, this order cannot say that Romedex can prove no set of facts that would entitle it to declaratory judgment. Accordingly, counterdefendants' motion to dismiss Romedex's claims for declaratory judgement is **DENIED**.

#### B. Grunwald.

Grunwald seeks declaratory relief regarding (1) intellectual property ownership as to the patent applications, and (2) ownership of the trade name and trademark "VasoNova" (GCC ¶¶ 42, 50). For the same reasons discussed above, counterdefendants' motion to dismiss Grunwald's counterclaim regarding ownership as to the patent applications is **DENIED**.

As to the declaratory relief sought regarding the trademark, counterdefendants argue that because the amended answer fails to allege that Grunwald used the "VasoNova" mark in any kind of commercial activity, his counterclaim must fail.

> It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark, it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to

9

> actually use the mark in the sale of goods or services. Therefore, a party pursuing a trademark claim must meet a threshold "use in commerce" requirement.

*Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1203 (9th Cir. 2012) (internal citations omitted).

The "use in commerce" requirement includes (1) an element of actual use, and (2) an element of display. *Id.* at 1204. In determining whether the two prongs have been satisfied, our court of appeals generally follows a "totality of the circumstances" approach, reflecting a movement away from the previous approach requiring the "actual use of the mark in the sale of goods or services." *Id.* at 1205. Accordingly, "evidence of actual sales, or lack thereof, is not dispositive in determining whether a party has established 'use in commerce' within the meaning of the Lanham Act." *Ibid.* Instead, our court of appeals has acknowledged the potential relevance of non-sales activity when analyzing the "use in commerce" requirement.

Grunwald alleges facts that, under the totality of the circumstances, support his argument that he is the owner of the "VasoNova" trademark. For example, Grunwald alleges that prior to the existence of VasoNova, Inc., he began to use the name "VasoNova" to brand devices he was developing, as well as conducting evaluation studies to demonstrate these products (GCC ¶ 26). He also alleges that he conducted market research in connection with these products, and created the domain name "vasonova.com" (*id.* at ¶¶ 26, 27). Because the issue of whether Grunwald used the trademark in commerce is highly factual, it is impossible to say that, at this stage of the litigation, declaratory relief will not be in order. Similarly, this order need not determine whether Grunwald abandoned the trademark or whether the alleged trademark contract amounts to a naked license. Consequently, counterdefendants' motion to dismiss Grunwald's claim for declaratory relief regarding trademark ownership is **DENIED**.

## CONCLUSION

For the reasons set forth above, counterdefendants' motions to dismiss all counterclaims are **GRANTED IN PART AND DENIED IN PART**. Specifically, counterdefendants' motions to dismiss Grunwald's breach of contract counterclaim and Romedex's fraud counterclaim are **GRANTED**. Countercomplainants may seek leave to amend and will have **21 CALENDER DAYS**

10

from the date of this order to file a motion, noticed on the normal 35-day calender, for leave to file amended counterclaims. A proposed amended complaint must be appended to the motion and counterclaimants must plead their best case. The motion should clearly explain how the amendment to the counterclaims cure the deficiencies identified herein.

The hearing scheduled for **DECEMBER 20, 2012**, is **VACATED**.

**IT IS SO ORDERED.**

Dated: December 11, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE